# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHEN TURNER,<br><br>        Plaintiff,<br><br>    v.<br><br>MODESTO POLICE DEPARTMENT, et al.,<br><br>        Defendants. | Case No. 1:23-cv-00210-ADA-SAB<br><br>ORDER REQUIRING PLAINTIFF TO SHOW CAUSE IN WRITTEN DECLARATION WHY THIS ACTION SHOULD NOT BE DISMISSED FOR LACK OF JURISDICTION<br><br>(ECF No. 1)<br><br>**TWENTY-ONE DAY DEADLINE** |

Plaintiff Stephen Turner is appearing *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983. Currently before the Court is Plaintiff's complaint, filed on February 15, 2023.

## I.

## SCREENING REQUIREMENT

Notwithstanding any filing fee, the court shall dismiss a case if at any time the Court determines that the complaint "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2); see Lopez v. Smith, 203 F.3d 1122, 1129 (9th Cir. 2000) (section 1915(e) applies to all *in forma pauperis* complaints, not just those filed by prisoners); Calhoun v. Stahl, 254 F.3d 845 (9th Cir. 2001) (dismissal required of *in forma pauperis* proceedings which seek monetary relief from immune defendants); Cato v. United States, 70

F.3d 1103, 1106 (9th Cir. 1995) (district court has discretion to dismiss *in forma pauperis* complaint under 28 U.S.C. § 1915(e)); Barren v. Harrington, 152 F.3d 1193 (9th Cir. 1998) (affirming sua sponte dismissal for failure to state a claim). The Court exercises its discretion to screen the plaintiff's complaint in this action to determine if it "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2).

In determining whether a complaint fails to state a claim, the Court uses the same pleading standard used under Federal Rule of Civil Procedure 8(a). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

In reviewing the *pro se* complaint, the Court is to liberally construe the pleadings and accept as true all factual allegations contained in the complaint. Erickson v. Pardus, 551 U.S. 89, 94 (2007). Although a court must accept as true all factual allegations contained in a complaint, a court need not accept a plaintiff's legal conclusions as true. Iqbal, 556 U.S. at 678. "[A] complaint [that] pleads facts that are 'merely consistent with' a defendant's liability . . . 'stops short of the line between possibility and plausibility of entitlement to relief.' " Id. (quoting Twombly, 550 U.S. at 557). Therefore, the complaint must contain sufficient factual content for the court to draw the reasonable conclusion that the defendant is liable for the misconduct alleged. Iqbal, 556 U.S. at 678.

## II.

## DISCUSSION

### A. Plaintiff's Allegations and Causes of Action

The Court accepts Plaintiff's allegations in the complaint as true *only* for the purpose of the *sua sponte* screening requirement under 28 U.S.C. § 1915.

Plaintiff names the following Defendants: (1) the Modesto Police Department; (2) the

1   City of Modesto; (3) Galen Carroll, in his individual and official capacities, as Chief of Police of
2   Modesto Police Department; (4) Best Western Palm Court Inn; (5) Best Western International,
3   Inc.; (6) Rita Garcia, general manager of Best Western Palm Court Inn; and (6) Metro One Loss
4   Prevention Services Group (West Coast) Inc.  (Compl., ECF No. 1.)

5        Plaintiff alleges he checked in and registered at the Best Western Palm Court Inn ("Best
6   Western") on October 20, 2022, and a friend also registered as an accompanying guest.  (Compl.
7   ¶ 19.)  Best Western requested Plaintiff's vehicle make and model information and license plate
8   information, and Plaintiff listed his 1989 Ford E-150 van with a Nevada license plate number.
9   That night, as to not disturb his friend, Plaintiff chose to work on his phone in his van.  (Compl.
10  ¶ 20.)  A police officer in a vehicle followed another vehicle into the Best Western parking lot,
11  and a police officer stepped out of the vehicle, quickly spotted Plaintiff, and eyed him
12  suspiciously from about 25 yards away.  (Id.)  Plaintiff became uncomfortable, exited the
13  vehicle, and sat at a patio area.  About fifteen minutes later Plaintiff saw the police officer go to
14  the front desk.

15        Plaintiff returned to his van to work, after the police were gone.  (Compl. ¶ 21.)  In order
16  to cool down on the warm night, Plaintiff removed his shirt, and went to the back of the van to
17  recline on a mattress, and fell asleep.  About an hour and a half later, Plaintiff believes the Metro
18  One security guard called the Modesto Police Department to report someone sleeping in a van.
19  Plaintiff was awoken by Modesto police officers.  (Compl. ¶ 23.)  Plaintiff was extremely
20  frightened, and claims the police lacked reasonable and articulable suspicion to conduct the
21  investigation.  The police shined lights and said "We know you're in there, Mr. Turner.  Get
22  Out!"  (Id.)

23        A short while later, the police stated they would break into the vehicle if necessary.
24  Plaintiff prayed they would stop yelling and would go away, but upon the threat, put on a shirt
25  and exited the vehicle.  (Compl. ¶ 24.)  Plaintiff explained he was working on his phone and fell
26  asleep.  The officers told Plaintiff he could not sleep in his van.  Plaintiff explained he was a
27  registered guest.  The officers never checked identification, never searched the van, and did not
28  search Plaintiff.  However, Plaintiff claims he feared violence if he did not get out of the van.

1  Plaintiff states the encounter lasted about five (5) minutes, and that the officers said he could not
2  go back to his van.

3  Plaintiff told the officers he was going to return to his room. However, Plaintiff states
4  instead, he was so upset he decided to go the fitness center thinking exercise would calm him
5  down and relieve stress, but after 10 minutes, decided to leave to look for a restaurant. (Compl. ¶
6  27.) Plaintiff then drove to a local truck stop and due to the severe stress and fatigue, he quickly
7  fell asleep. The next morning, Plaintiff returned to the hotel to "explain[] the details surrounding
8  the tragic event that transpired the previous night . . . requested to speak to the General Manager
9  Ms. Rita Garcia . . . [but] [u]nfortunately, to Plaintiff[']s [] dismay, Garcia never exercised the
10 civility or courtesy to communicate with him." (Compl. ¶ 32.)

11 Plaintiff brings claims only pursuant to California state law. Plaintiff's first cause of
12 action is brought against the Modesto police officers for violation of the Bane Act, California
13 Civil Code § 52.1. Plaintiff's second cause of action is for intentional infliction of emotional
14 distress against the Modesto police officers. Plaintiff's third cause of action is for negligence or
15 gross negligence against Defendants Best Western, Metro One, Doe 3, and Rita Garcia.
16 Plaintiff's fourth cause of action is for negligent hiring, supervision, or retention of an employee
17 against Defendants Best Western and Metro One. Plaintiff's fifth cause of action is for violation
18 of the California Unfair Competition Law against Defendants Best Western, and Metro One.
19 Plaintiff seeks in excess of $200,000.00, as well as punitive damages and attorneys' fees.

**B. The Court Shall Require Plaintiff to Address the Claim of Diversity Jurisdiction Before Proceeding to Screening the Merits of Plaintiff's Complaint**

1. <u>General Legal Standards</u>

23 "In this action, as in all actions before a federal court, the necessary and constitutional
24 predicate for any decision is a determination that the court has jurisdiction—that is the power—
25 to adjudicate the dispute." <u>United Invs. Life Ins. Co. v. Waddell & Reed Inc.</u>, 360 F.3d 960, 967
26 (9th Cir. 2004) (quoting <u>Toumajian v. Frailey</u>, 135 F.3d 648, 652 (9th Cir. 1998)). "The
27 foundational support for all the court's rulings flows from that power." <u>Toumajian</u>, 135 F.3d at
28 652 (citing <u>Marbury v. Madison</u>, 5 U.S. (1 Cranch) 137, 2 L.Ed. 60 (1803)). "If that power is

missing, however, the court is not in a position to act and its decisions cannot generally be enforced." Toumajian, 135 F.3d at 652; see also United Invs. Life Ins. Co. v. Waddell & Reed Inc., 360 F.3d 960, 967 (9th Cir. 2004) ("Here the district court had a duty to establish subject matter jurisdiction over the removed action *sua sponte,* whether the parties raised the issue or not.").

Federal courts may exercise "diversity jurisdiction" when the amount in controversy exceeds $75,000 and the parties are "citizens of different States." 28 U.S.C. § 1332(a); Rainero v. Archon Corp., 844 F.3d 832, 839 (9th Cir. 2016). Diversity jurisdiction requires "complete diversity," meaning that the citizenship of each plaintiff is different from the citizenship of each defendant. See, e.g., Weeping Hollow Ave. Trust v. Spencer, 831 F.3d 1110, 1113 (9th Cir. 2016). A natural person's citizenship is determined by her "domicile," which is the person's "permanent home, where she resides with the intention to remain or to which she intends to return." Kanter v. Warner-Lambert Co., 265 F.3d 853, 857 (9th Cir. 2001). A person's State of residence is not necessarily her State of citizenship. See id.

Because domicile, not residence, determines citizenship, allegations of residence are insufficient to establish citizenship or diversity jurisdiction. See Scott, 865 F.3d at 195; Rainero, 844 F.3d at 839; Travaglio v. American Express Co., 735 F.3d 1266, 1268-69 (10th Cir. 2013); Kanter, 265 F.3d at 857-58. "The party seeking to invoke the district court's diversity jurisdiction always bears the burden of both pleading and proving diversity jurisdiction." Rainero, 844 F.3d at 840 (quoting NewGen, LLC v. Safe Cit, LLC, 840 F.3d 606, 613-14 (9th Cir. 2016)); see also Kanter, 265 F.3d at 857-58.

  2. <u>Plaintiff's Complaint, Current Mailing Address, and Other Court Filings Prompt the Court to Require Plaintiff to Address his Claim of Nevada Citizenship before Proceeding into Further Screening</u>

Plaintiff's complaint submitted in this action is a verified complaint, signed under the penalty of perjury. In the caption of the verified complaint, and for purposes of receiving communications from the Court, Plaintiff utilizes the following mailing address: 5194 Bolton Place, Newark, CA 94560 (hereinafter the "California Address"). (ECF No. 1 at 1.)

1   However, for purposes of diversity jurisdiction, Plaintiff claims he is a resident of the
2  State of Nevada, and a citizen of the State of Nevada. (Compl. ¶¶ 1, 12.) Plaintiff does not
3  specifically claim the citizenship of any Defendant, rather referring to the Defendants as
4  conducting business in the Eastern District of California. (See Compl. ¶¶ 2-11.) As for the
5  entity Defendants, Plaintiff alleges the Modesto Police Department and Best Western Palm Court
6  Inn have their principal place of business in California; that Best Western International has its
7  principal place of business in the State of Arizona; and that Defendant Metro One has their
8  principal place of business in the State of Illinois. (Compl. ¶ 12.)

9   The Court takes judicial notice of Plaintiff's filings in other cases that date back more
10 than ten years before the filing of this action.[1] The following discussion does not include all
11 actions that Plaintiff has filed in the Northern District of California.

12   On December 5, 2012, Stephen B. Turner, proceeding *pro se*, filed an action in the
13 Northern District of California, Case No. 4:12-cv-06174-KAW (ECF No. 1). Therein, Plaintiff
14 utilized the same mailing address as he is using in this action, the California Address. (Id.)
15 Therein, Plaintiff proffered in the verified complaint that he was an "adult currently residing in
16 the County of Alameda, State of California." (ECF No. 1 at 2, ¶ 3.), Plaintiff describes how he
17 was incarcerated on a parole violation in April of that year, and thus was on parole in the County
18 of Alameda around that time period. (Id. at ¶¶ 17-18.)

19   Five years later,[2] a complaint filed was filed on December 29, 2017, in the Northern

---

[1] Under the Federal Rules of Evidence, a court may take judicial notice of a fact that is "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Judicial notice may be taken "of court filings and other matters of public record." Reyn's Pasta Bella, LLC v. Visa USA, Inc., 442 F.3d 741, 746 n.6 (9th Cir. 2006); Lee, 250 F.3d at 689; Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007); Bennett v. Medtronic, Inc., 285 F.3d 801, 802 n.2 (9th Cir. 2002).

[2] Prior to 2012, Case No. 3:11-cv-05176-CRB, was filed in the Northern District of California on October 24, 2011, and has a civil cover sheet stating Plaintiff Stephen B. Turner is a resident of Alameda, though was then incarcerated in San Lorenzo. During the time period of 2012 to 2016, Plaintiff continued to claim California citizenship in the complaints he filed, and utilized the California Address. In Case No. 3:12-cv-06231-MMC, Plaintiff used the California Address in the complaint filed December 7, 2012, and stated "During the time period complained of, Plaintiff was a parolee in custody at San Quentin State Prison in Marin County, California. Plaintiff is currently a parolee residing in Alameda County, California." (ECF No. 1 at ¶ 5.) In Case No. 3:12-cv-06516-CRB, Plaintiff used the California Address in the complaint filed December 26, 2012, and again stated: "During the time period complained of, Plaintiff was a parolee in custody at San Quentin State Prison in Marin County, California. Plaintiff is currently a parolee residing in Alameda County, California." (ECF No. 1 at ¶ 8.). In Case No. 3:13-cv-01940-

District of California, entitled <u>Stephen Turner v. Regina Dennis, et al.</u>, Case No. 4:17-cv-07361-SBA (ECF No. 1), utilizing the same California Address.  Plaintiff, proceeding *pro se*, therein states in the complaint that he is a "citizen of California and a resident of Alameda County." (Case No. 4:17-cv-07361-SBA, ECF No. 1.); <u>see also</u> <u>Turner v. Dennis</u>, No. C 17-07361 SBA, 2018 WL 1276886, at *1 (N.D. Cal. Mar. 8, 2018) ("Plaintiff is a citizen of California and a resident of Alameda County.").

The Court acknowledges that in the complaint filed in this action, Plaintiff claims Nevada citizenship, and also states in the complaint that when he registered at the Best Western, he registered his van with Nevada license plates with the hotel.  The Court also acknowledges that Plaintiff's area code in previous complaints in the Northern District, contained a California area code of (510), whereas now Plaintiff appears to have a Nevada area code (775).  <u>See</u> https://www.cpuc.ca.gov/areacodes/ (last accessed May 9, 2023).

In this regard, the Court notes that in a complaint filed on November 19, 2019, in the Northern District of California, Plaintiff Stephen Turner used an address in Nevada, 1048 War Bonnet Way, NV 89451 (the "Nevada Address"), and stated he was a citizen and resident of Nevada.  (4:19-cv-07598-KAW, ECF No. 1.)  The Court acknowledges that Plaintiff also began using what appears to be the Nevada area code.

However, approximately six months later in a complaint filed on May 27, 2021, in the Northern District of California, Plaintiff utilized the California Address, but stated that he is "a resident of the State of Nevada." (Case No. 4:21-cv-04071-JST (N.D. Cal., ECF No. 1 at ¶ 1.)  Under jurisdiction, Plaintiff also states he is a "citizen of the State of Nevada." (<u>Id.</u> at ¶ 5.)  Therein, Plaintiff does allege he opened a banking account in Reno Nevada, on March 29, 2018.  Further, the first amended complaint filed on June 22, 2021, then *does* utilize the Nevada Address.  (Case No. 4:21-cv-04071-JST, ECF No. 9 at 1.)

Then *however*, Plaintiff became represented by counsel in the same action, and the action

---

CRB, filed on April 29, 2013 in the Northern District of California, Plaintiff identifies the same California Address as his mailing address, and states he is a resident of Alameda County.  <u>See also</u> 4:11-cv-06191-PJH (California Address); 4:12-cv-05258-YGR (California Address); 4:12-cv-06174-KAW (California Address); 4:15-cv-03099-HSG (California Address).

1 was refiled as a class action, with Plaintiff as the proposed class representative.  Notably, in the
2 second amended complaint filed by counsel on October 4, 2021, the jurisdictional basis is now
3 the Class Action Fairness Act, and the complaint states Plaintiff "resides in the City of Newark,
4 Alameda County, California."  (Case No. 4:21-cv-04071-JST, ECF No. 31 at 2, ¶5.)  Of further
5 note, two subclasses that Plaintiff sought to represent were: (1) "All of the aforementioned Class
6 members who were residents of California at the time that BANA charged the Legal Process
7 Fee(s) (the 'California Sub-Class')"; and (2) "All of the aforementioned California Sub-Class
8 members who were 65 years old or older at the time that BANA charged the Legal Process
9 Fee(s) (the 'California Elder Sub-Class')."  (Id. at ¶ 23.)  Therefore, Plaintiff therein claimed to
10 be a resident of California again.  A motion to dismiss was filed on November 3, 2021, and on
11 November 24, 2021, Plaintiff filed a notice of voluntary dismissal.

12       The Court resolves all doubt against the existence of jurisdiction.  See Geographic
13 Expeditions, Inc. v. Est. of Lhotka ex rel. Lhotka, 599 F.3d 1102, 1107 (9th Cir. 2010); see also
14 Kanter, 265 F.3d at 857–58 ("Since the party asserting diversity jurisdiction bears the burden of
15 proof . . . Pfizer's failure to specify Plaintiffs' state citizenship was fatal to Defendants' assertion
16 of diversity jurisdiction.").  Accordingly, given Plaintiff has claimed California citizenship for
17 years utilizing the federal court in the Northern District of California, and utilizing the California
18 Addres; given Plaintiffs' current complaint identifies his mailing address as the same California
19 Address; and particularly given the recent apparent attempt to amend a class action complaint
20 from previously alleging Nevada residency, to California residency for purposes of representing
21 California subclasses, the Court shall require Plaintiff to address his claims of Nevada
22 citizenship.

23       The Court finds it necessary to require Plaintiff to address his citizenship before the Court
24 proceeds any further in screening the merits of Plaintiff's complaint, as the Court may lack any
25 power to act in this case.  See United Invs. Life Ins. Co., 360 F.3d at 967 ("[I]n all actions before
26 a federal court, the necessary and constitutional predicate for any decision is a determination that
27 the court has jurisdiction—that is the power—to adjudicate the dispute." (quoting Toumajian,
28 135 F.3d at 652)).

Plaintiff shall specifically address his claimed citizenship in relation to his domicile, and addressing the standards and factors described below:

> For diversity purposes, a natural person is a citizen of a state if they are: (1) a citizen of the United States and (2) domiciled in that state. *Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983). A person's domicile is their permanent home where they reside with the intention to remain or to which they intend to return. *Lew v. Moss*, 797 F.2d 747, 749–50 (1986). A person who resides in a particular state is not necessarily domiciled there and thus is not necessarily a citizen of that state. *See, e.g.*, *Weible v. United States*, 244 F.2d 158, 163 (9th Cir. 1957) ("Residence is physical, whereas domicile is generally a compound of physical presence plus an intention to make a certain definite place one's permanent abode, though, to be sure, domicile often hangs on the slender thread of intent alone, as for instance where one is a wanderer over the earth."). "Residence is not an immutable condition of domicile." *Id.* Although some courts have adopted a presumption that a person's residence is *prima facie* evidence of the person's domicile, the Ninth Circuit has not done so. *Mondragon v. Capital One Auto Fin.*, 736 F.3d 880, 885–86 (9th Cir. 2013) (citations omitted); *see also Lopez v. Costco Wholesale Corp.*, No. 1:20-cv-01654-DAD-HBK, 2021 WL 487368, at *2 (E.D. Cal. Feb. 10, 2021) (recognizing that the Ninth Circuit has not adopted that presumption). In determining one's domicile, courts in the Ninth Circuit may consider a variety of factors, including: "current residence, voting registration and voting practices, location of personal and real property, location of brokerage and bank accounts, location of spouse and family, membership in unions and other organizations, place of employment or business, driver's license and automobile registration, and payment of taxes." *Lew*, 797 F.2d at 750. Domicile is determined based on "objective facts," with no single controlling factor, and "statements of intent are entitled to little weight when in conflict with facts." *Id.* The Ninth Circuit adheres to a presumption of continuing domicile, under which "once established, a person's state of domicile continues unless rebutted with sufficient evidence of change." *Mondragon*, 736 F.3d at 886.

Kozlowski v. FCA US LLC, No. 121CV00896DADJLT, 2021 WL 5356474, at *3 (E.D. Cal. Nov. 17, 2021); see also Carter v. McConnel, 576 F. Supp. 556, 558 (D. Nev. 1983) ("The rule in the Ninth Circuit and virtually all other jurisdictions is that a person's old domicile is not lost until a new one is acquired . . . Acquisition of a new domicile requires the concurrence of two factors: (1) residence in fact in the new state and (2) the intention to remain there for an indefinite period of time.") (citations omitted); Adams v. W. Marine Prod., Inc., 958 F.3d 1216, 1221 (9th Cir. 2020) ("One's domicile is her 'permanent home'—that is, where (i) she resides,

(ii) 'with the intention to remain or to which she intends to return.' ") (citations omitted).

Plaintiff's response to this order, including any description or submission of exhibits, shall be by declaration or affidavit signed under the penalty of perjury. In this regard, the Court reminds Plaintiff that he submitted his original complaint under the penalty of perjury, and that under Federal Rule of Civil Procedure 11, any "unrepresented party certifies that to the best of the person's knowledge, information, and belief . . . the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation of discovery." Fed. R. Civ. P. 11(b)(3).; see also Gabarrete v. Hazel, No. 1:11-CV-00324-MJS PC, 2012 WL 1966023, at *3 (E.D. Cal. May 31, 2012) (on screening, finding "[i]t appears that Plaintiff has violated Rule 11 of the Federal Rule of Civil Procedure by submitting contradictory statements . . . Plaintiff is not allowed to proceed on his excessive force claim against Defendants and will not be allowed to do so unless he provides sufficient explanation as to the contradictions between the allegations of the Second Amended Complaint and the exhibits attached to his original Complaint in this action, and provides truthful facts detailing" the incident.); Lamon v. Amrheign, No. 1:12-CV-00296-AWI-GS, 2014 WL 3940286, at *6 (E.D. Cal. Aug. 12, 2014) (in screening, finding that given the discrepancy between the original complaint and first amended complaint, "it appear[ed] that Plaintiff ha[d] omitted material facts from the First Amended Complaint," and admonishing the Plaintiff that such "intentional omission of material facts in a pleading constitutes a falsehood and may result in the imposition of sanctions under Rule 11.").

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

### III.

### ORDER

Accordingly, for the above explained reasons, IT IS HEREBY ORDERED that **within twenty-one days of service of this order**, Plaintiff shall show cause in a written declaration signed under the penalty of perjury, why this action should not be dismissed for lack of diversity jurisdiction, given Plaintiff's current California mailing address in relation to conflicting representations before federal courts regarding Plaintiff's residency and citizenship, and specifically addressing the facts and legal authorities discussed throughout the above order, including those pertaining to establishing domicile for purposes of citizenship.

IT IS SO ORDERED.

Dated:   **May 10, 2023**

UNITED STATES MAGISTRATE JUDGE