# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHEN TURNER, | Case No. 1:23-cv-00210-ADA-SAB |
| Plaintiff, | ORDER DISCHARGING ORDER TO SHOW CAUSE RE DIVERSITY JURISDICTION |
| v. | |
| MODESTO POLICE DEPARTMENT, et al., | SCREENING ORDER GRANTING LEAVE TO FILE AMENDED COMPLAINT |
| Defendants. | (ECF Nos. 1, 6, 7, 8) |
| | **THIRTY DAY DEADLINE** |

## I.

## INTRODUCTION AND BACKGROUND

Plaintiff Stephen Turner is appearing *pro se* and *in forma pauperis* in this action. Plaintiff filed this action on February 13, 2023.  (ECF No. 1.)  On May 10, 2023, the Court issued an order requiring Plaintiff to show cause in writing as to why this action should not be dismissed for lack of jurisdiction based on Plaintiff's claim of Nevada citizenship.  (ECF No. 6.) On June 2, 2023, and June 5, 2023, Plaintiff filed responses to Court's order to show cause. (ECF Nos. 7, 8.)  For the reasons explained herein, the Court discharges the order to show cause, and issues the following screening order finding Plaintiff's complaint fails to establish diversity jurisdiction, and fails to state a claim.  The Court shall grant Plaintiff leave to file a first amended complaint that addresses the diversity pleading deficiencies identified below, and in

1   consideration of the legal standards and findings below that Plaintiff's five causes of action.  If
2   Plaintiff

## II.

### SCREENING REQUIREMENT

Notwithstanding any filing fee, the court shall dismiss a case if at any time the Court determines that the complaint "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2); see Lopez v. Smith, 203 F.3d 1122, 1129 (9th Cir. 2000) (section 1915(e) applies to all *in forma pauperis* complaints, not just those filed by prisoners); Calhoun v. Stahl, 254 F.3d 845 (9th Cir. 2001) (dismissal required of *in forma pauperis* proceedings which seek monetary relief from immune defendants); Cato v. United States, 70 F.3d 1103, 1106 (9th Cir. 1995) (district court has discretion to dismiss *in forma pauperis* complaint under 28 U.S.C. § 1915(e)); Barren v. Harrington, 152 F.3d 1193 (9th Cir. 1998) (affirming sua sponte dismissal for failure to state a claim).  The Court exercises its discretion to screen the plaintiff's complaint in this action to determine if it "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2).

In determining whether a complaint fails to state a claim, the Court uses the same pleading standard used under Federal Rule of Civil Procedure 8(a).  A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . ."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

In reviewing the *pro se* complaint, the Court is to liberally construe the pleadings and accept as true all factual allegations contained in the complaint.  Erickson v. Pardus, 551 U.S. 89, 94 (2007).  Although a court must accept as true all factual allegations contained in a complaint, a court need not accept a plaintiff's legal conclusions as true.  Iqbal, 556 U.S. at 678.  "[A]

1  complaint [that] pleads facts that are 'merely consistent with' a defendant's liability . . . 'stops

2  short of the line between possibility and plausibility of entitlement to relief.' "  Id. (quoting

3  Twombly, 550 U.S. at 557).  Therefore, the complaint must contain sufficient factual content for

4  the court to draw the reasonable conclusion that the defendant is liable for the misconduct

5  alleged.  Iqbal, 556 U.S. at 678.

**III.**

**COMPLAINT ALLEGATIONS**

8  The Court accepts Plaintiff's allegations in the complaint as true *only* for the purpose of

9  the *sua sponte* screening requirement under 28 U.S.C. § 1915.

10  Plaintiff names the following Defendants: (1) the Modesto Police Department; (2) the

11  City of Modesto; (3) Galen Carroll, in his individual and official capacities, as Chief of Police of

12  Modesto Police Department; (4) Best Western Palm Court Inn ("Best Western"); (5) Best

13  Western International, Inc., doing business as BWH Hotel Group ("BWH"); (6) Rita Garcia,

14  general manager of Best Western Palm Court Inn; (6) Metro One Loss Prevention Services

15  Group (West Coast) Inc.  (Compl., ECF No. 1.)  Defendant also names "Doe" Defendants.  Doe

16  1 and Doe 2 are Modesto police officers.  Doe 3 is identified as a security guard for Best Western

17  Palm Court Inn and employed by Metro One.

18  Plaintiff alleges he checked in and registered at the Best Western Palm Court Inn on

19  October 20, 2022, and a friend also registered as an accompanying guest.  (Compl. ¶ 19.)  Best

20  Western requested Plaintiff's vehicle make and model information and license plate information,

21  and Plaintiff listed his 1989 Ford E-150 van with a Nevada license plate number.  That night, as

22  to not disturb his friend, Plaintiff chose to work on his phone in his van.  (Compl. ¶ 20.)  A

23  police officer in a vehicle followed another vehicle into the Best Western parking lot, and a

24  police officer stepped out of the vehicle, quickly spotted Plaintiff, and eyed him suspiciously

25  from about 25 yards away.  (Id.)  Plaintiff became uncomfortable, exited the vehicle, and sat at a

26  patio area.  About fifteen minutes later Plaintiff saw the police officer go to the front desk.

27  Plaintiff returned to his van to work, after the police were gone.  (Compl. ¶ 21.)  In order

28  to cool down on the warm night, Plaintiff removed his shirt, and went to the back of the van to

recline on a mattress, and fell asleep.  About an hour and a half later, Plaintiff believes the Metro One security guard called the Modesto Police Department to report someone sleeping in a van. Plaintiff was awoken by Modesto police officers.  (Compl. ¶ 23.)  Plaintiff was extremely frightened, and claims the police lacked reasonable and articulable suspicion to conduct the investigation.  The police shined lights and said "We know you're in there, Mr. Turner.  Get Out!"  (Id.)

A short while later, the police stated they would break into the vehicle if necessary. Plaintiff prayed they would stop yelling and would go away, but upon the threat, put on a shirt and exited the vehicle.  (Compl. ¶ 24.)  Plaintiff explained he was working on his phone and fell asleep.  The officers told Plaintiff he could not sleep in his van.  Plaintiff explained he was a registered guest.  The officers never checked identification, never searched the van, and did not search Plaintiff.  However, Plaintiff claims he feared violence if he did not get out of the van. Plaintiff states the encounter lasted about five (5) minutes, and that the officers said he could not go back to his van.

Plaintiff told the officers he was going to return to his room.  However, Plaintiff states instead, he was so upset he decided to go the fitness center thinking exercise would calm him down and relieve stress, but after 10 minutes, decided to leave to look for a restaurant.  (Compl. ¶ 27.)  Plaintiff then drove to a local truck stop and due to the severe stress and fatigue, he quickly fell asleep.  The next morning, Plaintiff returned to the hotel to "explain[] the details surrounding the tragic event that transpired the previous night . . . requested to speak to the General Manager Ms. Rita Garcia . . . [but] [u]nfortunately, to Plaintiff[']s [] dismay, Garcia never exercised the civility or courtesy to communicate with him."  (Compl. ¶ 32.)

Plaintiff brings claims only pursuant to California state law.  Plaintiff's first cause of action is brought against the Modesto police officers for violation of the Bane Act, California Civil Code § 52.1.  Plaintiff's second cause of action is for intentional infliction of emotional distress against the Modesto police officers.  Plaintiff's third cause of action is for negligence or gross negligence against Defendants Best Western, Metro One, Doe 3, and Rita Garcia. Plaintiff's fourth cause of action is for negligent hiring, supervision, or retention of an employee

against Defendants Best Western and Metro One.  Plaintiff's fifth cause of action is for violation of the California Unfair Competition Law against Defendants Best Western, and Metro One. Plaintiff seeks in excess of $200,000.00, as well as punitive damages and attorneys' fees.

**IV.**

**DISCUSSION**

For the reasons explained below, while the Court discharges the order to show cause regarding Plaintiff's citizenship, the Court finds Plaintiff's complaint insufficiently pleads diversity jurisdiction.  Therefore, if Plaintiff chooses to file an amended complaint, Plaintiff shall address the insufficiencies identified below regarding diversity jurisdiction.  Any amended complaint shall state the state of citizenship of the Plaintiff and *each* Defendant, as specified below.

Further, while the Court does not yet proceed to a recommendation to the District Judge on a screening of Plaintiff's causes of action, even if Plaintiff did appropriately plead diversity jurisdiction, the Court additionally finds below that the complaint fails to state a cognizable claim, and if the Court were to make a recommendation based on the current complaint as pled, the Court would recommend the complaint be dismissed.  It does not appear amendment would be fruitful based on the current factual allegations and legal standards, however, given the Plaintiff's *pro se* status, and the threshold issue of diversity jurisdiction, the Court shall grant leave to file an amended complaint.  Plaintiff shall keep the below legal standards in mind in deciding whether to file an amended complaint.

A. **Although the Court shall Discharge the Order to Show Cause Re Plaintiff's Citizenship, the Complaint Insufficiently Pleads Diversity Jurisdiction**

1. General Legal Standards

"In this action, as in all actions before a federal court, the necessary and constitutional predicate for any decision is a determination that the court has jurisdiction—that is the power— to adjudicate the dispute." United Invs. Life Ins. Co. v. Waddell & Reed Inc., 360 F.3d 960, 967 (9th Cir. 2004) (quoting Toumajian v. Frailey, 135 F.3d 648, 652 (9th Cir. 1998)).  "The foundational support for all the court's rulings flows from that power." Toumajian, 135 F.3d at

652 (citing <u>Marbury v. Madison</u>, 5 U.S. (1 Cranch) 137, 2 L.Ed. 60 (1803)). "If that power is missing, however, the court is not in a position to act and its decisions cannot generally be enforced." <u>Toumajian</u>, 135 F.3d at 652; <u>see also</u> <u>United Invs. Life Ins. Co. v. Waddell & Reed Inc.</u>, 360 F.3d 960, 967 (9th Cir. 2004) ("Here the district court had a duty to establish subject matter jurisdiction over the removed action *sua sponte,* whether the parties raised the issue or not.").

Federal courts may exercise "diversity jurisdiction" when the amount in controversy exceeds $75,000 and the parties are "citizens of different States." 28 U.S.C. § 1332(a); <u>Rainero</u>, 844 F.3d at 840. Diversity jurisdiction requires "complete diversity," meaning that the citizenship of each plaintiff is different from the citizenship of each defendant. <u>See, e.g.</u>, <u>Weeping Hollow Ave. Trust v. Spencer</u>, 831 F.3d 1110, 1113 (9th Cir. 2016). A natural person's citizenship is determined by her "domicile," which is the person's "permanent home, where she resides with the intention to remain or to which she intends to return." <u>Kanter v. Warner-Lambert Co.</u>, 265 F.3d 853, 857 (9th Cir. 2001). A person's State of residence is not necessarily her State of citizenship. <u>See id.</u>

Because domicile, not residence, determines citizenship, allegations of residence are insufficient to establish citizenship or diversity jurisdiction. <u>See</u> <u>Scott</u>, 865 F.3d at 195; <u>Rainero</u>, 844 F.3d at 839; <u>Travaglio v. American Express Co.</u>, 735 F.3d 1266, 1268-69 (10th Cir. 2013); <u>Kanter</u>, 265 F.3d at 857-58. "The party seeking to invoke the district court's diversity jurisdiction always bears the burden of both pleading and proving diversity jurisdiction." <u>Rainero</u>, 844 F.3d at 840 (quoting <u>NewGen, LLC v. Safe Cit, LLC</u>, 840 F.3d 606, 613-14 (9th Cir. 2016)); <u>see also</u> <u>Kanter</u>, 265 F.3d at 857-58.

    2.    <u>The Order to Show Cause Shall be Discharged</u>

The Court required Plaintiff to address the claim of diversity jurisdiction, specifically, his claim of Nevada citizenship. (<u>See</u> ECF No. 6.)[1] Although the Court resolves all doubt against

---

[1] The Court incorporates the discussion from the order to show cause. As stated the Court summarized therein, "[g]iven Plaintiff has claimed California citizenship for years utilizing the federal court in the Northern District of California, and utilizing the California Address; given Plaintiffs' current complaint identifies his mailing address as the same California Address; and particularly given the recent apparent attempt to amend a class action complaint

1 the existence of jurisdiction, <u>Geographic Expeditions, Inc. v. Est. of Lhotka ex rel. Lhotka</u>, 599

2 F.3d 1102, 1107 (9th Cir. 2010), Plaintiff has addressed the discrepancies regarding *his* state

3 citizenship sufficiently for the Court to accept Plaintiff's declaration of Nevada citizenship.[2]  The

4 Court shall discharge the order to show cause.  However, such finding is without prejudice to any

5 appearing Defendants' ability to challenge jurisdiction on such basis, and to conduct preliminary

6 discovery as to the issue of Plaintiff's residency and citizenship.

7            3.    <u>Complaint Insufficiently Pleads Diversity Jurisdiction</u>

8        Nonetheless, while the order to show cause regarding Plaintiff's state citizenship shall be

9 discharged, the complaint is insufficient to establish diversity jurisdiction for the reasons

10 explained below.  <u>See</u> <u>Rainero v. Archon Corp.</u>, 844 F.3d 832, 840 (9th Cir. 2016) ("The party

11 seeking to invoke the district court's diversity jurisdiction always bears the burden of both

12 pleading and proving diversity jurisdiction." (quoting <u>NewGen</u>, 840 F.3d at 613-14)).  The Court

13 shall grant leave to amend to plead the citizenship of all named Defendants in the first instance.

14 However, as further explained below, as currently pled, even if diversity jurisdiction were

15 properly pled, Plaintiff's complaint would fail to state a claim.  Accordingly, while the Court

16 must grant leave to amend unless clear that amendment would be futile, Plaintiff is notified that

17 for the reasons and legal authorities below, the Court would recommend the current complaint be

18 dismissed for failure to state a claim.

19        For purposes of diversity jurisdiction, Plaintiff claims he is a resident of the State of

20 Nevada, and a citizen of the State of Nevada.  (Compl. ¶¶ 1, 12.)  Plaintiff generally proffers the

21 Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a).  (Compl. ¶ 12.)  Plaintiff does

22 not specifically claim the citizenship of any Defendant, rather referring to the Defendants as

23
24 from previously alleging Nevada residency, to California residency for purposes of representing California subclasses, the Court hall require Plaintiff to address his claims of Nevada citizenship." (ECF No. 6 at 8.)

25 [2] In response to the order to show cause, Plaintiff declares that he is legally a Nevada resident because he is a registered voter in Nevada; possesses a valid Nevada driver's license; and proffers his "legal address" is in Incline

26 Village, Nevada.  (ECF No. 7.)  Plaintiff proffers his forwarding mailing address in California is not his legal address or residence, but his son's residence, and that he does not reside there.  Plaintiff proffers he travels and finds

27 it more convenient to have his mail forwarded to his son's address.  Plaintiff also submitted another declaration explaining the reasoning as to why his residence changed between amended complaints in Northern District of California Case No. 4:21-cv-04071-JST.  The Court finds the information sufficient to discharge the order to show

28 cause as to the Court's concern regarding Plaintiff's citizenship.

conducting business in the Eastern District of California, or referring to their principal place of business.  (See Compl. ¶¶ 2-13.)

Defendants Galen Carrol, Rita Garcia, and Does 1-3 are specified as conducting business in the Eastern District, but Plaintiff does not allege their citizenship.  (Compl. ¶¶ 4, 7, 9, 10.)

Plaintiff alleges Best Western Palm Court Inn is a business entity unknown, that conducted business in the Eastern District, and has its principal place of business in the Eastern District; that Best Western International, identified as incorporated, has its principal place of business in the State of Arizona and has sufficient contacts to place it under the jurisdiction of the Eastern District; and that Defendant Metro One, identified as incorporated, has their principal place of business in the State of Illinois.  (Compl. ¶¶ 5, 6, 8, 12.)

"Absent unusual circumstances, a party seeking to invoke diversity jurisdiction should be able to allege affirmatively the actual citizenship of the relevant parties."  Kanter, 265 F.3d at 857.  While Plaintiff has alleged his own citizenship, Plaintiff does not sufficiently identify the citizenship of the other Defendants, and this is insufficient to establish diversity jurisdiction.  See Murphy v. Allstate Ins. Co., No. 220CV753KJMEFBPS, 2020 WL 5095862, at *2 (E.D. Cal. Aug. 28, 2020) ("Plaintiff alleges that he resides in Pittsburg, California—which suggests he is a Citizen of California—but he does not provide any allegations establishing defendant's citizenship."); Salazar v. Wells Fargo Bank, N.A., No. 217CV2420MCEEFBPS, 2019 WL 951439, at *2 (E.D. Cal. Feb. 27, 2019) ("The complaint indicates that plaintiffs have resided in California since 2012, suggesting they are citizens of California. But the complaint is silent as to the citizenship of both Wells Fargo and Quality.").

Plaintiff shall allege the citizenship of the named individual Defendants to the best of his ability, Rita Garcia and Galen Carrol.  The lack of citizenship of the Doe Defendants is not fatal to Plaintiff's claims at this stage, however, could destroy diversity jurisdiction if the parties are named and substituted in, and happen to be Nevada citizens.[3]

---

[3]  Some courts may require a Plaintiff shall attempt to plead the citizenship of a Doe Defendant.  See Fineman v. Lutz-Laidlaw P'ship, No. 20CV695-L(WVG), 2020 WL 1905783, at *2 (S.D. Cal. Apr. 17, 2020) ("Plaintiffs have not alleged the citizenship of each of Lutz-Laidlaw Partnership's partners and have therefore not alleged its citizenship.  Plaintiffs have not alleged the citizenship of any of the Doe Defendants, whether business entities or individuals.  Failure to do so destroys diversity jurisdiction.").  However, the Court does not believe the presence of

In addition to not expressly stating the citizenship of the corporate Defendants BWI and Metro One, Plaintiff only provides the principal place of business and not the state of incorporation.  "[A] corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business."  28 U.S.C. § 1332(c)(1).  Therefore, Plaintiff shall plead the state of incorporation of each corporation named as a Defendant, in addition to the principal place of business.  See Tiesing v. 357 Customs Inc., No. CIVS070115GEBEFBPS, 2008 WL 2705553, at *1 (E.D. Cal. July 10, 2008) ("[A] plaintiff must specifically allege the diverse citizenship of all parties . . . she has alleged only that she 'resid[es]' in California and that 357 Customs, Inc. is a corporation organized and in good standing under the laws of the State of Florida . . . she did not allege facts regarding its principal place of business.").

Plaintiff states Best Western Palm Court Inn "is a business entity unknown . . . [and] [a]t all times relevant herein, [Best Western] conducted business in the Eastern District of California."  (Compl. ¶ 5.)  Plaintiff thus shall be required to allege the citizenship of this Defendant.  Kanter, 265 F.at 857 ("Absent unusual circumstances, a party seeking to invoke diversity jurisdiction should be able to allege affirmatively the actual citizenship of the relevant parties.").

The Court notes that the California Secretary of State website indicates that "Best Western Palm Court Hotel, LLC" had a dissolution filed on August 7, 2012.[4]  Partnerships and LLCs are citizens of every state of which its owners/members are citizens.  Johnson v. Columbia Properties Anchorage, LP, 437 F.3d 894, 899 (9th Cir. 2006) ("We therefore join our sister circuits and hold that, like a partnership, an LLC is a citizen of every state of which its owners/members are citizens.").  If Defendant Best Western is an LLC, Plaintiff must plead the

a Doe Defendant with an unspecified citizenship is strictly fatal at this stage.  See Soliman v. Philip Morris Inc., 311 F.3d 966, 971 (9th Cir. 2002) ("The citizenship of fictitious defendants is disregarded for removal purposes and becomes relevant only if and when the plaintiff seeks leave to substitute a named defendant.").

[4]  Courts may take judicial notice of "a fact that is not subject to reasonable dispute because it … can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).  Courts routinely take judicial notice of information contained in the California Secretary of State's website.  See, e.g., Gerritsen v. Warner Bros. Ent. Inc., 112 F. Supp. 3d 1011, 1034 (C.D. Cal. 2015); Applied Underwriters, Inc. v. Lara, 530 F. Supp. 3d 914, 924 (E.D. Cal. 2021).

citizenship of all members.  "[T]o properly establish diversity jurisdiction 'with respect to a limited liability company, *the citizenship of all of the members must be pled.*' " Cartessa Aesthetics LLC v. Aesthetics Biomedical Inc., No. CV-19-05827-PHX-DWL, 2019 WL 6875379, at *1 (D. Ariz. Dec. 17, 2019) (emphasis added by quoting source) (quoting NewGen, , 840 F.3d at 611); Amalgamated Leasing & Trading, Inc. v. Sumber Mas, LLC, No. CV1503246TJHFFMX, 2015 WL 13047918, at *1 (C.D. Cal. June 2, 2015) ("Plaintiffs alleging diversity jurisdiction where a party is a limited liability company must allege the citizenship of all of the company's members." (citing Johnson v. Columbia Props. Anchorage, LP, 437 F.3d 894, 899 (9th Cir. 2005)); Bender v. Yates, No. 23CV485-L-DEB, 2023 WL 2583277, at *1–2 (S.D. Cal. Mar. 17, 2023) ("The Complaint does not provide any information regarding the membership of either of the two limited liability company Defendants [and] [b]ecause Plaintiffs do not properly allege citizenship of any of the parties, they have not alleged complete diversity as required for subject matter jurisdiction under 28 U.S.C. § 1332(a).").

Accordingly, Plaintiff shall, to the best of his ability, allege the citizenship of the individual Defendants Galen Carrol and Rita Garcia; Defendants BWI, and Metro One, by identifying their principal place of business and state of incorporation; and shall allege the citizenship of Best Western, including each member of the company if an LLC or partnership. See Rivera v. Countrywide Home Loans, No. CV 15-6086-GW (FFMX), 2015 WL 12781238, at *2 (C.D. Cal. Nov. 12, 2015) ("Plaintiff alleges that Countrywide is 'a business or corporation organized under Federal and state law and headquartered in Charlotte, North Carolina,' . . . and Cartozian and Associates is 'a business of unknown organization doing business in Los Angeles County California,' [however,] [i]n order for the Court to determine whether diversity jurisdiction exists, Plaintiff must state what type of entity Countrywide is, what type of entity Cartozian and Associates is, and allege each entity's citizenship accordingly [and] [f]or example, if either entity is a corporation, Plaintiff must state so, and further state the entity's place of incorporation and principal place of business."); United Prod. & Tech. Ltd. v. Above Edge, LLC, No. CV212661DMGAFMX, 2023 WL 2661174, at *2 (C.D. Cal. Feb. 3, 2023) ("Rule 8 requires that a federal complaint predicated on diversity jurisdiction must contain allegations as to the

citizenship of each party, and thus Plaintiff was required to allege the citizenship of Qiu—and any other members of the partnership—in its original pleadings [and the] failure to do so renders the Complaint defective on its face."); Kanvick v. Braunworth, No. 316CV00053RCJVPC, 2016 WL 5346957, at *2 (D. Nev. Aug. 30, 2016) ("To establish diversity jurisdiction, plaintiff must expressly allege the *state citizenship* of each defendant, not only their state of residence and United States citizenship.") (emphasis in original); Pigg v. Gamble, No. C-12-5009 TEH PR, 2012 WL 5464624, at *2 (N.D. Cal. Nov. 8, 2012) ("In order to sufficiently allege diversity jurisdiction, Plaintiff must specify the state of citizenship for each individual and business he is suing.").

The Court shall grant leave to amend to correct the deficiencies identified above that preclude finding subject matter jurisdiction. See 19th Cap. Grp., LLC v. 3 GGG's Truck Lines, Inc., No. CV 18-2493 PA (RAOX), 2018 WL 6219886, at *2-3 (C.D. Cal. Apr. 3, 2018) (Plaintiffs must identify the citizenship of each member of Element LLC to adequately allege the citizenship of Element LLC . . . Despite these deficiencies a district court may, and should, grant leave to amend when it appears that subject matter jurisdiction may exist, even though the complaint inadequately alleges jurisdiction.").

If Plaintiff chooses to file an amended complaint that addresses the jurisdictional issues above, Plaintiff shall consider the Court's findings below. Again, while the Court does not yet proceed to a recommendation to dismiss Plaintiff's causes of action because of the threshold jurisdictional deficiencies, even if Plaintiff did appropriately plead diversity jurisdiction, the Court additionally finds below that the complaint fails to state a cognizable claim, and if the Court were to make a recommendation based on the current complaint as pled, the Court would recommend the complaint be dismissed.

### B.      Plaintiff has not Stated a Claim for a Bane Act Violation

Plaintiff's first cause of action is for violation of California's Bane Act, brought against the Defendant Modesto Police Officers, *i.e.* Defendants Doe 1 and Doe 2. (Compl. ¶ 39-48.) Plaintiff alleges that the Defendant police officers interfered or attempted to interfere, through threats, intimidation, and coercion, with the exercise or enjoyment of Plaintiff's rights secured by

the U.S. Constitution, the California Constitution, and other California law.  (Compl. ¶ 40.) Plaintiff alleges that by such threats, intimidation, and coercion, Plaintiff reasonably believed that if he exercised his right against unlawful seizure and entry, Doe 1 and Doe 2 would commit violence against him or his property.  (Compl. ¶ 41.)

### 1.   Bane Act Generally

California Civil Code § 52.1 provides a cause of action for violations of constitutional and statutory rights.  McFarland v. City of Clovis, 163 F. Supp. 3d 798, 806 (E.D. Cal. 2016) (citing Rivera v. County of L.A., 745 F.3d 384, 393 (9th Cir.2014)).  "The essence of a § 52.1 claim is that 'the defendant, by the specified improper means (i.e., threats, intimidation or coercion), tried to or did prevent the plaintiff from doing something he or she had the right to do under the law or to force the plaintiff to do something that he or she was not required to do under the law.' "  McFarland, 163 F. Supp. 3d at 806 (quoting Jones v. Kmart Corp., 17 Cal.4th 329, 334, 70 Cal.Rptr.2d 844, 949 P.2d 941 (1998); Shoyoye v. County of L.A., 203 Cal.App.4th 947, 955–56, 137 Cal.Rptr.3d 839 (2012)).  "Therefore, there are two distinct elements for a § 52.1 claim: (1) intentional interference or attempted interference with a state or federal constitutional or legal right, and (2) the interference or attempted interference was by threats, intimidation or coercion."  McFarland, 163 F. Supp. 3d at 806 (citing Allen v. City of Sacramento, 234 Cal.App.4th 41, 67, 183 Cal.Rptr.3d 654 (2015)).

The Bane Act was enacted in response to the increasing incidence of hate crimes in California.  Bender v. Cnty. of Los Angeles, 217 Cal. App. 4th 968, 977, 159 Cal. Rptr. 3d 204, 212 (2013); Reese v. Cnty. of Sacramento, 888 F.3d 1030, 1040 (9th Cir. 2018).  "The Bane Act civilly protects individuals from conduct aimed at interfering with rights that are secured by federal or state law, where the interference is carried out 'by threats, intimidation or coercion.' "  Reese, 888 F.3d at 1040 (citation omitted).

In Cornell, the California Court of Appeal found that "[p]roperly read, the statutory phrase 'threat, intimidation or coercion' serves as an aggravator justifying the conclusion that the underlying violation of rights is sufficiently egregious to warrant enhanced statutory remedies, beyond tort relief.' "  Cornell v. City & Cnty. of San Francisco, 17 Cal. App. 5th 766, 800, 225

Cal. Rptr. 3d 356, 383 (2017).  "Accordingly, Cornell held that 'the egregiousness required by Section 52.1 is tested by whether the circumstances indicate the arresting officer had a specific intent to violate the arrestee's right to freedom from unreasonable seizure.' " Reese v. Cnty. of Sacramento, 888 F.3d 1030, 1043 (9th Cir. 2018) (quoting Cornell, 225 Cal. Rptr. 3d at 383-84).  Based on Cornell, the Ninth Circuit  "dr[e]w two conclusions as to the necessary showing for an excessive force claim under the Bane Act[:] First, the Bane Act does not require the 'threat, intimidation or coercion' element of the claim to be transactionally independent from the constitutional violation alleged[;] . . . Second, the Bane Act requires a 'a specific intent to violate the arrestee's right to freedom from unreasonable seizure.' " Reese, 888 F.3d at 1043 (quoting Cornell, 225 Cal.Rptr.3d at 382–83).

"[F]ederal courts in California have found that a threat of arrest from law enforcement can constitute 'coercion' under the Bane Act, even without a threat of violence." Adjaye v. White, No. CV 20-8940-JGB(E), 2021 WL 4353101, at *8 (C.D. Cal. July 1, 2021) (quoting Cuviello v. City of Vallejo, 2020 WL 6728796, at *8); see also Black Lives Matter, 398 F. Supp. 3d at 680–81 ("[C]ourts have consistently held that a threat of arrest from law enforcement can be 'coercion' under the Bane Act, even without a threat of violence per se." (citing Cuviello v. City of Stockton, No. CIV. S-07-1625 LKK, 2009 WL 9156144, at *17 (E.D. Cal. Jan. 26, 2009))).  Courts have based these holdings on the reasoning that the "particular coercive power of law enforcement officers has led courts to impose liability when detention, rather than violence, is threatened . . . [as] [t]he threat of detention or arrest is included in the plain meaning of 'coercion.' " Adjaye, 2021 WL 4353101, at *8 (quoting Cuviello, 2009 WL 9156144, at *17) (collecting cases); Black Lives Matter, 398 F. Supp. 3d at 680 (same).

2.   Plaintiff Fails to State a Bane Act Violation

"The Fourth Amendment permits brief investigative stops . . . when a law enforcement officer has 'a particularized and objective basis for suspecting the particular person stopped of criminal activity.' " Navarette v. California, 572 U.S. 393, 396, 134 S. Ct. 1683, 1687, 188 L. Ed. 2d 680 (2014) (quoting United States v. Cortez, 449 U.S. 411, 417–418, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981)).  "An investigatory detention, a brief seizure by police based on reasonable

suspicion of criminal activity, is a 'narrowly drawn exception to the probable cause requirement of the Fourth Amendment.' " United States v. Dudley, No. 220CR00037GMNNJK, 2021 WL 2793854, at *5 (D. Nev. Apr. 8, 2021) (quoting Terry v. Ohio, 392 U.S. 1, 26 (1968)); see also People v. Souza, 9 Cal. 4th 224, 231, 885 P.2d 982 (1994) ("A detention is reasonable under the Fourth Amendment when the detaining officer can point to specific articulable facts that, considered in light of the totality of the circumstances, provide some objective manifestation that the person detained may be involved in criminal activity.").

Assuming there was an investigatory stop, detention, or seizure,[5] the Court finds no Bane Act violation alleged.  Plaintiff specifically alleges that the security guard called the Modesto police department to report that someone was sleeping in a van in the parking lot of Best Western.  (Id. at ¶ 22.)  At 10:45 p.m., the police shined lights into the van and said "We know you're in there, Mr. Turner.  Get Out!"  (Id. at ¶ 23)  A short while later, the police stated they would break into the vehicle if necessary.  Plaintiff prayed they would stop yelling and would go away, but upon the threat, put on a shirt and exited the vehicle.  (Id. at ¶ 24.)  Plaintiff explained he was working on his phone and fell asleep.  The officers told Plaintiff he could not sleep in his van.  Plaintiff explained he was a registered guest.  The officers never checked identification, never searched the van, and did not search Plaintiff.  However, Plaintiff claims he feared violence if he did not get out of the van.  Plaintiff states the encounter lasted about five (5) minutes, and that the officers said he could not go back to his van.

In addition to the allegation that the security guard called the police department, Plaintiff also alleges the police officers told Plaintiff they had a report of someone sleeping in a van.  (Id. at ¶ 9.)  Plaintiff alleges the police officers told Plaintiff he couldn't sleep in his van, told Plaintiff that this was private property, and Plaintiff questions: "Did the individual Defendant police officers somehow think Plaintiff . . . was trespassing?"  (Id. at ¶ 24.)  At one point in the complaint, Plaintiff states Defendants knew or should have known that a registered guest

---

[5] "[M]ere police questioning does not constitute a seizure."  Fla. v. Bostick, 501 U.S. 429, 434, 111 S. Ct. 2382, 2386, 115 L. Ed. 2d 389 (1991)  "[E]ven when officers have no basis for suspecting a particular individual, they may generally ask questions of that individual . . . ask to examine the individual's identification . . . and request consent to search his or her luggage . . . as long as the police do not convey a message that compliance with their requests is required."  Id. at 434–35.

1  sleeping in a vehicle registered with the hotel is not a crime; and Defendants knew or should

2  have known that no reasonable person would have called the Modesto Police.  (Id. at ¶ 57.)

3  Plaintiff alleges in the factual allegation section that Doe 1 and Doe 2 lacked reasonable and

4  articulable suspicion to conduct the investigation.  (Id. at ¶ 23.)

5       "[R]easonable suspicion exists when an officer is aware of specific, articulable facts

6  which, when considered with objective and reasonable inferences, form a basis for *particularized*

7  suspicion."  United States v. Montero-Camargo, 208 F.3d 1122, 1129 (9th Cir. 2000) (emphasis

8  in original); see also .  "A detention is reasonable under the Fourth Amendment when the

9  detaining officer can point to specific articulable facts that, considered in light of the totality of

10  the circumstances, provide some objective manifestation that the person detained may be

11  involved in criminal activity."  People v. Souza, 9 Cal. 4th 224, 231, 885 P.2d 982 (1994).

12       "A traffic stop is lawful at its inception if it is based on a reasonable suspicion that *any*

13  traffic violation has occurred, even if it is ultimately determined that no violation did occur."

14  Brierton v. Dep't of Motor Vehicles, 130 Cal. App. 4th 499, 510, 30 Cal. Rptr. 3d 275, 281

15  (2005) (emphasis in original) (citations omitted)); see also People v. Wells, 38 Cal. 4th 1078,

16  1082, 136 P.3d 810, 812 (2006) ("[A]n officer may stop and detain a motorist on reasonable

17  suspicion that the driver has violated the law.") (collecting cases).  A parking violation may

18  provide officers with reasonable suspicion to conduct [an] investigatory stop.  See United States

19  v. Alvarado, 763 F. App'x 609, 611 (9th Cir. 2019) ("The district court correctly concluded that

20  the officers had reasonable suspicion to conduct an investigatory stop when they seized Alvarado

21  . . . [as] [t]he officers had reasonable suspicion that Alvarado was committing an ongoing

22  parking violation based on a tip demonstrating 'sufficient indicia of reliability.' " (quoting

23  Navarette v. California, 572 U.S. 393, 397–401, 134 S.Ct. 1683, 188 L.Ed.2d 680 (2014); citing

24  United States v. Choudhry, 461 F.3d 1097, 1101–02 (9th Cir. 2006))).[6]  Alvarado involved the

---

25  [6] See People v. Bennett, 197 Cal. App. 4th 907, 916, 128 Cal. Rptr. 3d 595, 601–02 (2011) ("On appeal, the Ninth

26  Circuit [in Choudhry] held the parking violation justified the investigatory stop . . . At the outset, the Ninth Circuit
   rejected Choudhry's distinction between criminal traffic violations and civil traffic violations."); Choudhry, 461 F.3d

27  at 1101–02 ("[Whren] held that a traffic violation was sufficient to justify an investigatory stop, regardless of
   whether (i) the violation was merely pretextual . . . (ii) the stop departed from the regular practice of a particular
   precinct . . .  or (iii) the violation was common and insignificant . . [t]hus, under Whren, so long as Officers Silver

28  and Chan had reasonable suspicion to believe that Alvarado 'violated the traffic code,' the stop was reasonable

following allegations:

> The tipster provided his name and phone number to the dispatcher, and reported a suspicious vehicle—a green Honda Accord—in a residential cul-de-sac. When the officers arrived at the specified location, they found a car closely matching the description and location provided by the tipster, parked adjacent to a narrow length of curb between two driveways. The tipster also provided specific allegations of ongoing, observable criminal activity—that the car was parked in a red zone. The officers were not required to corroborate that there was an ongoing parking violation before conducting the investigatory stop. *See United States v. Williams*, 846 F.3d 303, 309–10 (9th Cir. 2016) (concluding there was reasonable suspicion because the officers were able to verify a tip regarding the make, model, and location of a car, even though they did not verify the allegations of ongoing, observable criminal activity prior to the stop).

Alvarado, 763 F. App'x at 611.

Based on the relevant legal authority, whether construed as a call about a trespass, a parking violation, or other report from the security guard about a guest violating a hotel policy such as one against camping or sleeping in the hotel parking lot, the Court finds no Bane Act violation because the police officers, Doe 1 and Doe 2, were made aware of specific, articulable facts which, when considered with objective and reasonable inferences, formed a basis for particularized suspicion of a crime.  See United States v. Mati, 466 F. Supp. 3d 1046, 1054 (N.D. Cal. 2020) ("Parking violations and other traffic violations are sufficient to establish reasonable suspicion." (citing Choudhry, 461 F.3d at 1098)); United States v. Coleman, 518 F. App'x 561 (9th Cir. 2013) ("Based on the totality of the circumstances, the officers had reasonable suspicion to believe Coleman was trespassing or about to trespass on private property."); United States v. Parker, 919 F. Supp. 2d 1072, 1079 (E.D. Cal. 2013); United States v. Sanders, 95 F. Supp. 3d 1274, 1281 (D. Nev. 2015) ("Even reasonable suspicion of a parking violation can justify an investigatory stop of a vehicle." (citing Choudhry, 461 F.3d 1097, 1101)); Coleman v. Hubbard, No. 6:11-CV-6022-AA, 2013 WL 3047306, at *3 (D. Or. June 15, 2013) ("[T]he undisputed evidence establishes that Officer Hubbard had reasonable suspicion to detain plaintiffs . . . Officer Hubbard was dispatched to the cemetery after receiving a report of potential trespass and

---

under the Fourth Amendment . . . Choudhry . . . argues that in California, parking laws are distinct from other traffic laws because of California's separate civil-administrative scheme for enforcing parking penalties [but] find [the] argument persuasive.") (quotation marks omitted).

1   sexual activity, and that Officer Hubbard observed plaintiff's vehicle in the cemetery, parked as

2   described in the report.").

3        The Court finds the fact Plaintiff registered the vehicle with the hotel has no bearing on

4   whether the officers had reasonable suspicion of a trespass or other crime.  See Gonzalez v. City

5   of Huntington Beach, 843 F. App'x 859, 862 (9th Cir. 2021) ("Looking at the 'totality of the

6   circumstances,' the Officers had reasonable suspicion that Gonzalez trespassed on Scafuto's

7   property . . . Specifically, based on Scafuto's claim that Gonzalez trespassed on his property and

8   Scafuto's identification of Gonzalez, the Officers had 'a particularized and objective basis'

9   sufficient to justify stopping Gonzalez . . . [and] [t]his is true even assuming that it was a legal

10  impossibility for Gonzalez to have trespassed upon Scafuto's backyard.") (citations omitted);

11  Easley v. Cnty. of Santa Clara, 702 F. App'x 552, 554 (9th Cir. 2017) ("Deputy Wallace had

12  reasonable suspicion to briefly detain Easley for investigative purposes when he observed his

13  vehicle parked on private property where Easley admitted that he did not know the owner,

14  appeared to be under the influence, and where burglaries had recently been reported."); Glass v.

15  Robinson, No. CV-19-04883-PHX-ROS, 2022 WL 252395, at *3 (D. Ariz. Jan. 27, 2022)

16  ("Robinson at least had reasonable suspicion Glass had committed trespass and DUI.  That

17  reasonable suspicion meant Robinson was permitted to use some force to prevent Glass from

18  leaving the scene during the Terry stop.").

19        Plaintiff concedes he was sleeping in his van in the hotel parking lot at 10:45 p.m.;

20  specifically alleges that the security guard called the police to report such fact; and therefore the

21  police officers had reasonable suspicion to conduct an investigation of a reported trespass.  Even

22  though a vehicle or guest may be registered at a hotel, that does not mean the guest is allowed to

23  do whatever they please in the parking lot in their vehicle, or that a hotel security guard is not

24  allowed to report a person sleeping in the vehicle of a hotel parking lot.  See Allred v. Harris, 14

25  Cal. App. 4th 1386, 1390, 18 Cal. Rptr. 2d 530 (1993) ("[A]s a tenant, had a possessory interest

26  in the parking lot and walkways, had the landlord's specific authorization to take steps necessary

27  for the security of the parking areas and was affected by the defendants' activities which were

28  aimed at disrupting his normal business activities."); United States v. Ellis, 121 F. Supp. 3d 927,

946 (N.D. Cal. 2015) (the general rule is that "landowners and tenants have a right to exclude persons from trespassing on private property; the right to exclude persons is a fundamental aspect of private property ownership." (quoting Allred, 14 Cal. App. 4th at 1390)); Rakas v. Illinois, 439 U.S. 128, 143 n.12, 99 S. Ct. 421, 430, 58 L. Ed. 2d 387 (1978) ("One of the main rights attaching to property is the right to exclude others."). In other words, even though Plaintiff claims that a guest sleeping in a vehicle may not be a crime, a hotel has the right to restrict hotel guests from camping in their vehicles in the parking lot, or restricting the number of people or cars associated with a hotel room, or limiting the type of activities allowed in the hotel or the parking lot, among other things.[7]

The Court further finds that considering the investigatory stop was based on reasonable suspicion, the request to exit the vehicle and threat to break into the vehicle if Plaintiff did not comply, do not state a Bane Act violation.

"The touchstone of our analysis under the Fourth Amendment is always the reasonableness in all the circumstances of the particular governmental invasion of a citizen's personal security." United States v. Williams, 419 F.3d 1029, 1031–32 (9th Cir. 2005) (quoting Pennsylvania v. Mimms, 434 U.S. 106, 108–09, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977)). "Whether a seizure is reasonable turns 'on a balance between the public interest and the individual's right to personal security free from arbitrary interference by law officers.' "

---

[7] In this regard, and as relevant to the negligence claim, "[a]lthough they are not insurers of safety, it is undisputed that owners or possessors of land, and particularly innkeepers, have a duty of care to protect invitees or tenants from the reasonably foreseeable criminal or tortious conduct of third persons." Gray v. Kircher, 193 Cal. App. 3d 1069, 1072–73, 236 Cal. Rptr. 891, 892–93 (Ct. App. 1987) (collecting cases). Therefore, the hiring of the security guard, and enforcement of policies or reporting of a person sleeping in their vehicle in the hotel parking lot may be a part of the duty to protect all patrons of the hotel. See Delgado v. Trax Bar & Grill, 36 Cal. 4th 224, 229, 113 P.3d 1159, 1160–61 (2005) ("It is established that business proprietors such as shopping centers, restaurants, and bars owe a duty to their patrons to maintain their premises in a reasonably safe condition, and that this duty includes an obligation to undertake reasonable steps to secure common areas against foreseeable criminal acts of third parties that are likely to occur in the absence of such precautionary measures."). "The existence of such a duty is a question of law to be determined on a case-to-case basis . . . after consideration of a number of factors, including 'the foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved.' " Gray v. Kircher, 193 Cal. App. 3d 1069, 1072–73, 236 Cal. Rptr. 891, 892–93 (Ct. App. 1987) (citations omitted).

1   <u>Williams</u>, 419 F.3d at 1031 (quoting <u>Mimms</u>, 434 U.S. at 109).

2      "[I]t is well established that an officer effecting a lawful traffic stop may order the driver

3   and the passengers out of a vehicle."  <u>Williams</u>, 419 F.3d at 1030; <u>see</u> <u>Mimms</u>, 434 U.S. at 111.

4   As the Supreme Court explained:

> [W]e are asked to weigh the intrusion into the driver's personal
> liberty occasioned not by the initial stop of the vehicle, which was
> admittedly justified, but by the order to get out of the car.  We
> think this additional intrusion can only be described as *de minimis*.
> The driver is being asked to expose to view very little more of his
> person than is already exposed.  The police have already lawfully
> decided that the driver shall be briefly detained; the only question
> is whether he shall spend that period sitting in the driver's seat of
> his car or standing alongside it.  Not only is the insistence of the
> police on the latter choice not a "serious intrusion upon the sanctity
> of the person," but it hardly rises to the level of a " 'petty
> indignity.' " *Terry v. Ohio, supra,* 392 U.S. at 17, 88 S.Ct. at 1877.
> What is at most a mere inconvenience cannot prevail when
> balanced against legitimate concerns for the officer's safety.

13   <u>Mimms</u>, 434 U.S. at 111.

14      Therefore, for the above explained reasons and based on Plaintiff's allegations, the Court

15   finds no Bane Act violation.  <u>See</u> <u>United States v. Ngumezi</u>, 980 F.3d 1285, 1289 (9th Cir. 2020)

16   ("Ordering a driver out of a car is indeed an 'intrusion into the driver's personal liberty'—albeit

17   one that the Court in <u>Mimms</u> described as a '*de minimis*' intrusion that 'hardly rises to the level

18   of a 'petty indignity.' " (quoting <u>Mimms</u>, 434 U.S. at 111)); <u>Williams</u>, 419 F.3d at 1033 ("We

19   are convinced that in this case the continuing importance of, and the public interest in, promoting

20   officer safety outweighs the marginal intrusion on personal liberty.").

21      **C.      Intentional Infliction of Emotion Distress Claim**

22      Plaintiff's second cause of action is for intentional infliction of emotional distress against

23   the Modesto police officers, Doe 1 and Doe 2, only.  (Compl. ¶¶ 49-55.)  Plaintiff alleges

24   Defendants Doe 1 and Doe 2 knew or should have known Plaintiff was susceptible to suffering

25   severe emotional distress from the actions taken against him; that Defendants' actions were

26   malicious, oppressive, and/or in reckless disregard of Plaintiff's constitutional rights; shocked

27   the conscience; and caused Plaintiff to suffer severe emotional distress.  (Compl. ¶¶ 50-52.)

28      The elements for a claim of intentional infliction of emotional distress under California

law are: "(1) outrageous conduct by the defendant, (2) intention to cause or reckless disregard of the probability of causing emotional distress, (3) severe emotional suffering, and (4) actual and proximate causation of the emotional distress."   Wong v. Tai Jing, 189 Cal.App.4th 1354, 1376 (2010) (quoting Agarwal v. Johnson, 25 Cal.3d 932, 946 (1979)); see also Adom v. City of Los Angeles, No. 521CV00711JFWKES, 2023 WL 3958913, at *18 (C.D. Cal. May 17, 2023). Conduct is "outrageous if it is 'so extreme as to exceed all bounds of that usually tolerated in a civilized community.' "   Simo v. Union of NeedleTrades, Industrial & Textile Employees, 322 F.3d 602, 622 (9th Cir. 2002) (quoting Saridakis v. United Airlines, 166 F.3d 1272, 1278 (9th Cir. 1999)).  The emotional distress must be "of such a substantial quantity or enduring quality that no reasonable man in a civilized society should be expected to endure it."  Simo, 322 F.3d at 622.

Based on the Court's findings in the previous section concerning reasonable suspicion and the ability of a law enforcement officer to order a person out of a vehicle, as well as Plaintiff's generalized and conclusory allegations regarding emotional distress, the Court finds Plaintiff's complaint fails to state a claim for intentional infliction of emotional distress.  See Raudelunas v. City of Vallejo, No. 221CV00394KJMJDP, 2022 WL 329200, at *11 (E.D. Cal. Feb. 3, 2022) ("The court assumes all factual allegations are true and construes them in the light most favorable to Mr. Raudelunas and finds Officer Brown's actions were not so extreme as to exceed all bounds of that usually tolerated in a civilized society . . . Officer Brown followed Mr. Raudelunas after he had fled the scene of an accident; when Mr. Raudelunas exited his vehicle, Officer Brown directed Mr. Raudelunas to 'get on the ground' and when Mr. Raudelunas did not comply, she deployed her taser one time, causing Mr. Raudelunas to fall to the ground . . . Because Mr. Raudelunas does not allege actions that constitute 'outrageous conduct' as a matter of law . . .the court dismisses his intentional infliction of emotional distress claim with leave to amend, if possible within the confines of Rule 11."); Mimms, 434 U.S. at 111); Williams, 419 F.3d at 1033; Choudhry, 461 F.3d at 1098; Gonzalez, 843 F. App'x at 862; Coleman v. Hubbard, No. 6:11-CV-6022-AA, 2013 WL 3047306, at *4 (D. Or. June 15, 2013) ("Officer Hubbard's detention of plaintiffs was supported by reasonable suspicion, and his allegedly rude conduct

toward plaintiffs does not constitute outrageous conduct sufficient to support an IIED claim.").

## D.      Negligence or Gross Negligence Claim

Plaintiff's third cause of action is for negligence or gross negligence against Defendants Best Western, BWI, Metro One, Doe 3 (the security guard), and Rita Garcia.  (Compl. ¶¶ 56-61.) Plaintiff generally alleges that Defendants had a duty to use reasonable care to Plaintiff; Defendants knew or should have known Plaintiff had the right to quiet enjoyment as a duly registered guest; that Defendants knew or should have known that a registered guest sleeping in a vehicle registered with the hotel is not a crime; and Defendants knew or should have known that no reasonable person would have called the Modesto Police.  (Compl. ¶ 57.)  Plaintiff further alleges Defendants demonstrated a lack of any care or an extreme departure from what a reasonably careful person would do in the same situation to prevent harm to Plaintiff, and the Defendants failed to act responsibly and appropriately.  (Compl. ¶ 58.)

"Under California law, '[t]he elements of negligence are: (1) defendant's obligation to conform to a certain standard of conduct for the protection of others against unreasonable risks (duty); (2) failure to conform to that standard (breach of duty); (3) a reasonably close connection between the defendant's conduct and resulting injuries (proximate cause); and (4) actual loss (damages).' "  Corales v. Bennett, 567 F.3d 554, 572 (9th Cir. 2009) (quoting McGarry v. Sax, 158 Cal.App.4th 983, 994, 70 Cal.Rptr.3d 519 (2008) (internal quotations omitted)).  "Under the doctrine of *respondeat superior*, an employer may be held vicariously liable for torts committed by an employee within the scope of employment."  Mary M. v. City of Los Angeles, 54 Cal.3d 202, 208 (1991); accord Robinson v. Solano Cty., 278 F.3d 1007, 1016 (9th Cir. 2002).

As noted above, "[a]lthough they are not insurers of safety, it is undisputed that owners or possessors of land, and particularly innkeepers, have a duty of care to protect invitees or tenants from the reasonably foreseeable criminal or tortious conduct of third persons."  Gray, 193 Cal. App. 3d at 1072–73, 236 Cal. Rptr. 891, 892–93 (Ct. App. 1987) (collecting cases). Therefore, the hiring of the security guard, and enforcement of policies or reporting of a person sleeping in their vehicle in the hotel parking lot may be a part of the duty to protect all patrons of the hotel.  See Delgado v. Trax Bar & Grill, 36 Cal. 4th 224, 229, 113 P.3d 1159, 1160–61

1   (2005) ("It is established that business proprietors such as shopping centers, restaurants, and bars

2   owe a duty to their patrons to maintain their premises in a reasonably safe condition, and that this

3   duty includes an obligation to undertake reasonable steps to secure common areas against

4   foreseeable criminal acts of third parties that are likely to occur in the absence of such

5   precautionary measures."); Allred, 14 Cal. App. 4th at 1390 ("[A]s a tenant, had a possessory

6   interest in the parking lot and walkways, had the landlord's specific authorization to take steps

7   necessary for the security of the parking areas and was affected by the defendants' activities

8   which were aimed at disrupting his normal business activities.").

9          In any event, Plaintiff's allegations are insufficient to state a claim for negligence against

10   the Defendants named as to this cause of action.  There are no allegations concerning any Best

11   Western employees before the security guard, Doe 3, called the police department.  The only

12   specific allegations pertaining to Rita Garcia is that she never exercised the civility or courtesy to

13   communicate with Plaintiff the morning following the incident, when Plaintiff attempted to

14   complain.  (Compl. ¶ 32.)  Plaintiff's conclusory allegation of negligence or gross negligence is

15   insufficient to state a plausible claim against the Defendants named as to this cause of action.

16          **E.      Negligent Hiring, Supervision, Or Retention Of An Employee**

17          Plaintiff's fourth cause of action is for negligent hiring, supervision, or retention of an

18   employee against Defendants Best Western and Metro One.  Plaintiff proffers California law on

19   negligent hiring, supervision, or retention of an employee makes an employer directly liable for

20   an employee's negligence, recklessness, or intentional wrongful acts when the employer knew or

21   should have known that the employee was a risk to others.  (Compl. ¶ 63.)  Plaintiff alleges

22   Defendants knew or should have known that Defendants Garcia and Doe 3 were unfit or

23   incompetent to perform the work for which they were hired.  (Compl. ¶ 64.)  Plaintiff further

24   alleges Defendants knew or should have known that Defendants Garcia and Doe 3 were unfit or

25   incompetent and that it created a particular risk of harm to others.  (Compl. ¶ 65.)

26          "Ordinarily, '[a]n employer may be liable to a third person for the employer's negligence

27   in hiring or retaining an employee who is incompetent or unfit."  Dent v. Nat'l Football League,

28   902 F.3d 1109, 1121–22 (9th Cir. 2018) (quoting Phillips v. TLC Plumbing, Inc., 172

1    Cal.App.4th 1133, 91 Cal.Rptr.3d 864, 868 (2009)).   "To establish liability, a plaintiff must

2    demonstrate the familiar elements of negligence: duty, breach, proximate causation, and

3    damages."  Id.  "There are 'two elements necessary for a duty to arise in negligent hiring and

4    negligent retention cases—the existence of an employment relationship *and* foreseeability of

5    injury.' "  Dent, 902 F.3d at 1122 (quoting Phillips, 91 Cal.Rptr.3d at 870-71).

6         For similar reasons as to why the underlying negligence claim fails, Plaintiff fails to state

7    a claim for negligent hiring or supervisions.  Additionally, while Plaintiffs' complaint sets forth

8    conclusory statements and the elements of a cause of action, there are no supporting facts alleged

9    to infer that these Defendants knew or should have known that Doe 3 or Rita Garcia were unfit

10   or incompetent for their positions.  "Threadbare recitals of the elements of a cause of action,

11   supported by mere conclusory statements" are insufficient to state a cognizable claim.  Iqbal, 556

12   U.S. at 678.

13        **F.      California Unfair Competition Law**

14        Plaintiff's fifth cause of action is for violation of the California Unfair Competition Law

15   against Defendants Best Western, BWI, and Metro One.

16        Plaintiff proffers the UCL claim is "premised on an 'unfair' business act or practice."

17   (Compl. 17.)  Plaintiff generally alleges the acts, omissions, misrepresentations, practices and

18   non-disclosures of Defendants as alleged in the  complaint, constituted a course of conduct of

19   unfair competition by means of unfair, unlawful and/or fraudulent business acts or practices

20   within the meaning of California Business and Professions Code § 17200, et seq.  Plaintiff

21   argues the Defendants' acts and practices are unfair to consumers/guests of Best Western, under

22   Section 17200, et seq.; are fraudulent or deceptive under the law; and "[t]he unfair business

23   practices of Defendants as described above [in the complaint] caused Plaintiff to sustain

24   injuries/damages."  (Compl. ¶ 73.)

25        The Court finds Plaintiff has failed to state a claim for violation of California's unfair

26   competition law.  "California's UCL prohibits unfair competition by means of any unlawful,

27   unfair or fraudulent business practice."  Birdsong v. Apple, Inc., 590 F.3d 955, 959 (9th Cir.

28   2009).  "Each prong of the UCL is a separate and distinct theory of liability."  Id. (citing Kearns

1  v. Ford Motor Co., 567 F.3d 1120, 1127 (9th Cir.2009).

2  　　　"To have standing under California's UCL, as amended by California's Proposition 64,

3  plaintiffs must establish that they (1) suffered an injury in fact and (2) lost money or property as

4  a result of the unfair competition." Birdsong, 590 F.3d at 959 (citing Cal. Bus. & Prof. Code §

5  17204; Walker v. Geico Gen. Ins. Co., 558 F.3d 1025, 1027 (9th Cir.2009)).  "In approving

6  Proposition 64, the California voters declared their intent 'to prohibit private attorneys from

7  filing lawsuits for unfair competition where they have no client who has been injured in fact

8  *under the standing requirements of the United States Constitution.*' " Birdsong, 590 F.3d at

9  959–60 (quoting Buckland v. Threshold Enters., Ltd., 155 Cal.App.4th 798, 814, 66 Cal.Rptr.3d

10  543 (Cal. Ct. App. 2007)).  "Thus, to plead a UCL claim, the plaintiffs must show, consistent

11  with Article III, that they suffered a distinct and palpable injury as a result of the alleged

12  unlawful or unfair conduct."  Id.  ("The requisite injury must be an invasion of a legally

13  protected interest which is (a) concrete and particularized, and (b) actual or imminent, not

14  conjectural or hypothetical.").

15  　　　Plaintiff alleges upon information and belief that DOE 3 (Security Guard) and Best

16  Western summoned the police to harass Plaintiff, violating the duty to provide him with

17  peaceful, quite enjoyment of his lodging.  However, Plaintiff never alleges the police made any

18  contact with Plaintiff at the hotel room.  Plaintiff alleges the police prevented him from returning

19  to his van, but does not allege he was prevented from returning to the hotel room.  (Compl. ¶ 28.)

20  Plaintiff told the police officers he would return to the hotel room.  (Compl. ¶ 27.)  Plaintiff

21  thereafter used the hotel gym facilities after leaving the van and the encounter with police,

22  instead of returning to the room.  (Compl. ¶ 27.)  Plaintiff then chose to go to a restaurant, then

23  drove to a truck stop, and fell asleep.  (Compl. ¶ 27.)  Therefore, there is no allegation to support

24  a finding that Plaintiff lost money or property due to the actions of Best Western or Metro One.

25  Plaintiff was never restricted from using the hotel room by these Defendants, and Plaintiff chose

26  to not return to the hotel room.  Plaintiff claims he was only dissatisfied with the customer

27  service at checkout, but does not even allege he requested or was refused a refund.

28  　　　Therefore, Plaintiff fails to state a claim for violation of the UCL.  See Rosario v. Yakte

1 <u>Properties, LLC</u>, No. 221CV01304KJMJDP, 2022 WL 1155843, at *1 (E.D. Cal. Apr. 19, 2022)

2 (dismissing claim because plaintiff did "not claim she lost money or property as a result of

3 defendants' allegedly unlawful actions."); <u>Ehret v. Uber Techs., Inc.</u>, 68 F. Supp. 3d 1121, 1132

4 (N.D. Cal. 2014) ("[S]tanding under the UCL is far narrower than traditional federal standing

5 requirements: '[w]e note UCl's standing requirements appear to be more stringent than the

6 federal standing requirements [as] [w]hereas a federal plaintiff's injury in fact may be intangible

7 and need not involve lost money or property, Proposition 64, in effect, added a requirement that

8 a UCL plaintiff's injury in fact specifically involve lost money or property.' " (quoting <u>Troyk v.</u>

9 <u>Farmers Group, Inc.</u>, 171 Cal.App.4th 1305, 1348 n. 31, 90 Cal.Rptr.3d 589 (2009))[8]; <u>Hazel v.</u>

10 <u>Prudential Fin., Inc.</u>, No. 22-CV-07465-CRB, 2023 WL 3933073, at *6 (N.D. Cal. June 9, 2023)

11 ("[J]ust because Plaintiffs' data is valuable in the abstract, and because ActiveProspect might

12 have made money from it, does not mean that Plaintiffs have 'lost money or property' as a

13 result."); <u>Causey v. Portfolio Acquisitions, LLC</u>, No. 2:10-CV-2781-KJM-EFB, 2013 WL

14 246916, at *3 (E.D. Cal. Jan. 22, 2013) ("An absence of facts describing the money or property

15 allegedly lost is fatal to a plaintiff's Section 17200 claim."); <u>Kwikset Corp. v. Superior Ct.</u>, 51

16 Cal. 4th 310, 323, 246 P.3d 877, 885 (2011) ("Proposition 64 requires that a plaintiff have 'lost

17 money or property' to have standing to sue.  The plain import of this is that a plaintiff now must

18 demonstrate some form of economic injury.").

19       Even if Plaintiff did allege economic injury, Plaintiff's conclusory allegations are

20 insufficient to state a claim against the named Defendants for unfair competition by means of

21 any unlawful, unfair or fraudulent business practice.

22       **G.      No Causes of Action Specifically Asserted Against Other Defendants**

23       While Plaintiff lists the City of Modesto, the Modesto Police Department, and Galen

24 Carrol as Defendants, Plaintiff does not allege any of the five specific causes of action against

25

26 [8] The Court views the issue essentially as a statutory construction issue, or more directly, a statutory eligibility issue.
Thus, "[t]he question before the Court is exclusively one of statutory interpretation: did the California Legislature
27 intend to" allow a corporate entity to bring a claim for a Bane Act violation?  <u>See</u> <u>Valentine</u>, 804 F. Supp. 2d at
1026–27 ("The question before the Court is exclusively one of statutory interpretation: did the California Legislature
28 intend to limit the right of action under the CIPA and the CCCL to in-state plaintiffs?").

these Defendants, nor does Defendant make any specific allegations against these Defendants.[9] As currently pled, Plaintiff's complaint does not contain enough factual details to permit the Court to draw the reasonable inference that any of the Defendants are liable for the misconduct alleged. Iqbal, 556 U.S. at 678. Therefore, Plaintiff's complaint does not state any claim against these Defendants.

### H.   Punitive Damages

Under the heading punitive damages, Plaintiff requests punitive damages against the Modesto Police Officers, the Modesto Police Department, and Defendant City of Modesto. (Compl. ¶ 74-77.) Under California law, a plaintiff is entitled to recover exemplary damages to punish a defendant if a plaintiff proves by clear and convincing evidence that the defendant "has been guilty of fraud, oppression, or malice…." Cal. Civ. Code § 3294(a). A request for punitive damages is not a standalone cause of action, it is merely a type of remedy that is dependent upon a viable cause of action. Marroquin v. Pfizer, Inc., 367 F. Supp. 3d 1152, 1168 (E.D. Cal. 2019); Bear v. Ohio Dept. of Rehab. & Corr., 156 F. Supp. 3d 898, 907 (N.D. Ohio 2016); Carino v. Standard Pac. Corp., 2014 WL 1400853 (E.D. Cal. Apr. 9, 2014); see also Caira v. Offner, 126 Cal. App. 4th 12, 39 n. 20 (2005) ("[T]here is no separate cause of action for punitive damages-they are only ancillary to a valid cause of action."). Therefore, because Plaintiffs have not alleged sufficient facts to support the underlying claim for each cause of action, Plaintiff is not entitled to punitive damages as to any cause of action.

### I.   Leave to Amend

Rule 15(a) is very liberal and leave to amend 'shall be freely given when justice so requires.'" Amerisource Bergen Corp. v. Dialysis West, Inc., 465 F.3d 946, 951 (9th Cir. 2006) (quoting Fed. R. Civ. P. 15(a)). However, courts "need not grant leave to amend where the amendment: (1) prejudices the opposing party; (2) is sought in bad faith; (3) produces an undue delay in the litigation; or (4) is futile." Id.

As Plaintiff is proceeding *pro se* in this action, the Court shall provide him with an

---

[9] Plaintiff only mentions the Modesto Police Department, the City of Modesto, and Carrol, in relation to attorneys' fees punitive, and treble damages, under the first and second causes of action. (Compl. ¶¶ 48, 55.)

opportunity to correct the deficiencies identified above concerning diversity jurisdiction. Plaintiff shall additionally consider the above legal standards and findings concerning the Court's view that as currently pled, aside from the issues of diversity jurisdiction, the complaint fails to state a claim.

## V.

### CONCLUSION AND ORDER

Based on review of the complaint in this action, Plaintiff has not established subject matter jurisdiction, and has failed to state any cognizable claim. Nonetheless, the Court will grant Plaintiff an opportunity to amend the complaint to cure the deficiencies identified in this order. See Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000). Plaintiff's amended complaint should be brief, Fed. R. Civ. P. 8(a), but it must also state what each named defendant did that led to the deprivation of Plaintiff's constitutional rights, Iqbal, 556 U.S. at 678–79. Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level . . . ." Twombly, 550 U.S. at 555 (citations omitted). Further, Plaintiff may not change the nature of this suit by adding new, unrelated claims in his first amended complaint. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints). Finally, Plaintiff is advised that an amended complaint supersedes the original complaint. Lacey v. Maricopa Cnty., 693 F.3d 896, 927. Absent court approval, Plaintiff's first amended complaint must be "complete in itself without reference to the prior or superseded pleading." E.D. Cal. L.R. 220.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

Based on the foregoing, IT IS HEREBY ORDERED that:

1.    The Court's order to show cause issued on May 10, 2023, (ECF No. 6), is DISCHARGED;

2.    Within **thirty (30) days** from the date of service of this order, Plaintiff shall file a first amended complaint curing the deficiencies identified by the Court in this order;

3.    The first amended complaint, including attachments, shall not exceed twenty-five (25) pages in length; and

4.    If Plaintiff fails to file a first amended complaint in compliance with this order, the Court will recommend that this action be dismissed consistent with the reasons stated in this order.

IT IS SO ORDERED.

Dated:    **July 9, 2023**

UNITED STATES MAGISTRATE JUDGE